IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

John Timothy Halter,           :

       Plaintiff,         :

  v.                            :   Case No. 2:07-cv-0645

Edmund A. Sargus, et al.,      :   JUDGE GRAHAM

       Defendants.        :

## REPORT AND RECOMMENDATION

    Plaintiff, John Timothy Halter, a prisoner proceeding pro se, filed this action against various defendants.  The case is before the Court for an initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  For the following reasons, this Court recommends that the complaint be dismissed as frivolous and failing to state a claim upon which relief can be granted.

I.

    28 U.S.C. §1915(e)(2) provides that in proceedings in forma pauperis, "[t]he court shall dismiss the case if ... (B) the action ... is frivolous or malicious [or] fails to state a claim on which relief can be granted...."  28 U.S.C. § 1915A further provides that in any prisoner case, the Court shall dismiss the complaint or any portion of it if, upon an initial screening, it appears that the complaint fails to state a claim upon which relief can be granted or seeks money damages from a defendant who is immune from suit. The purpose of this section is to prevent suits which are a waste of judicial resources and which a paying litigant would not initiate because of the costs involved.  See Neitzke v. Williams, 490 U.S. 319 (1989).  A complaint may be dismissed as frivolous only when the plaintiff fails to present a claim with an arguable or rational basis in law or fact.  See id. at 325.  Claims which lack such a basis include those for which the defendants are

clearly entitled to immunity and claims of infringement of a legal interest which does not exist, see id. at 327-28, and "claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." Id. at 328; see also Denton v. Hernandez, 504 U.S. 25 (1992). A complaint may be dismissed for failure to state a claim upon which relief can be granted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (l957). Pro se complaints are to be construed liberally in favor of the pro se party. See Haines v. Kerner, 404 U.S. 519 (1972).

II.

There are sixteen named defendants in this case. They are Edmund Sargus, a United States District Court Judge in the Southern District of Ohio; Deborah Solove, an Assistant United States Attorney; Alexandra Gelber, an attorney at the Department of Justice; the Delaware County Prosecutor; Robert G. Taylor, the Genoa Township Police Chief; Dan Mershon, a lieutenant in the Genoa Township Police Department; Mark Wells, an officer in the Genoa Township Police Department; Russ Ciballi, an officer in the Genoa Township Police Department; Al Alexander, an officer in the Genoa Township Police Department; Todd Woolum from the Genoa Township Police Department; Dean Boland, an attorney; Michael Hogue, a Delaware Municipal Court Judge; Christopher Cicero, an attorney; Jeffrey Jordan; Deborah Sanders, an Assistant United States Attorney; Steven Starcher; C. Eichenlaub, Warden of FCI in Milan, Michigan; the FCI Mailroom Supervisor; the FCI Mailroom staff member; and Linda Birchfield, Action Pest Control, Inc. The complaint is written in narrative form with apparent legal claims interspersed throughout. Accordingly, the Court will attempt to interpret Mr. Halter's allegations and screen them appropriately.

A. <u>Illegal Search and Seizure/Destroying Exculpatory Evidence/Falsifying Police Reports</u>

The complaint states (reproduced verbatim):

> Lieutenant Dan Mershon along with Officer Mark Wells and other's conducted an Illegal Search and then an Illegal Seizure after falsifying and lying to obtain the Search Warrant, then Lieutenant Mershon proceeded to both 'Tamper' with and Destroy Exculpable Evidence, knew his actions were illegal and further allowed his Witness to Destroy and Withhold Exculpable Evidence and then falsified his Police Reports and withheld same from The Court with the full knowledge and willingness of Officer Mark Wells and other Genoa Township Police Officers and A.U.S.A. Deborah Solove as well as U.S. Justice Department Attorney Alexandra Gelber who also knew of the 'Tampered' and Destroyed Evidence and who also did not aprise the Court and Jury of same which prejudiced me.
>
> \*\*\*
>
> Genoa Township Police Chief, know al all times the propensity and proclivity of Lieutenant Dan Mershon and Officer Mark Wells and others to: 'Taint' Evidence, Destroy Evidence, Suborn Testimony, and 'manufacture' Evidence and Crime Scenes that don't exist, and had a responsibility to ensure and protect my rights against same yet blithly chose to ignore same.
>
> \*\*\*
>
> Jeffrey Jordan, did knowingly and willingly on behalf of Lieutenant Dan Mershon, did in fact remove crucial Exculpatory Evidence and Destroy same as well as make false statements solely in consideration of The Genoa Police Department and Delaware Prosecutor to give him favorable considerations and attention to his then pending Rape Charges.
>
> Steven Starcher, altered the alleged 'Crime Scene' and other nefarious actions known and unknown to me.

3

(Compl. p. 8, 12).

It is apparent that these claims are intended to call into question the validity of Mr. Halter's criminal conviction in this Court on a charge of possession of child pornography. <u>See</u> Case No. 2:04-cr-189 (Judgment dated June 2, 2006, doc. #110).  However, the United States Supreme Court has held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

<u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994)(internal footnotes omitted).  Thus, when evaluating an inmate's § 1983 constitutional claim, a court must evaluate whether granting judgment in the inmate's favor would undermine or invalidate the inmate's conviction or sentence.  <u>Id.</u> at 487.  If it would, the inmate's complaint must be dismissed unless there is evidence that the conviction or sentence has been invalidated.  <u>Id.</u>

Because Mr. Halter's claims against the police officers in this case involve, among other things, illegal search and seizure, manufacturing, destroying and tainting evidence, and falsifying the police reports that ultimately led to his conviction, the Court concludes that <u>Heck</u> bars these claims.  Clearly, a ruling in Mr. Halter's favor would undermine his conviction.  Thus, because Mr. Halter has not presented any evidence that his conviction has been invalidated, (and, in fact, a direct appeal from his conviction is still pending) he cannot successfully bring a § 1983 claim against these police officers for the claims asserted.  <u>See</u>, <u>e.g.</u>,

4

Smahaeizadeh v. Cunigan, 182 F.3d 391, 398-99 (6th Cir.1999)(no § 1983 claim for illegal search and seizure if the illegal search would undermine the conviction); Anthony v. Roberson, 26 Fed.Appx. 419, 421, 2001 WL 1587298, at *1 (6th Cir. Dec. 11, 2001)(unpublished)(Heck bars § 1983 claim against police officers for destroying exculpatory evidence because ruling in inmate's favor invalidates conviction).

### B. Prosecutors' Actions

The complaint states (reproduced verbatim):

> Alexandra Gelber of the U.S. Department of Justice, did knowingly and willingly with malice aforethought both conspire jointly and severally with A.U.S.A. Deborah Solove, U.S. Attorney Deborah F. Sanders, Lieutenant Dan Mershon, Officer Mark Wells, and Judge Edmund A. Sargus, as well as Attorneys Dean Boland and Christopher Cicero, to violate and deprive my rights to wit:
>
> 1)Conspired to conceal and destroy exculpatory evidence
>
> 2)To withhold Evidence from me as well as the Court and the Jury
>
> 3)Conspired to deny and deprive me of my Freedom by alleging that I am both a 'Threat' as well as a 'Flight Risk' despite my having been free on Bond for 5 years prior to their Illegal Charges and thru out the course of my trial, and thusly further making false statements to The Court to ensure that I was denied my right to Appellate Bond
>
> 4)Further being a direct Representative and Agent for the U.S. Department of Justice, did knowingly and willingly with malice aforethought allow A.U.S.A. to introduce 'Tainted Evidence' as well as also knew about Evidence Destroyed by The Governments Witness, yet allowed same despite it being illegal and same being her responsibility to disclose to the Court

5

> 5) Personally allowed Perjurous Testimony by Governmental Agents as well as Genoa Township Police Officers that included but wasn't limited to: Lieutenant Dan Mershon, Officer Mark Wells, and others unknown to me.
>
> ***
>
> The Delaware County Prosecutor, did knowingly and willingly cause to be issued a Search Warrant on insufficient indicia as well as utilizing Perjurous Statements that he/she should have known to be false as well as should have further corroborated his/her self before allowing request for issuance of same, and then further denied and violated my Rights to a Speedy Trial by purposely 'stalling' for 5 years and then Dismissing Case solely to allow A.U.S.A. Deborah Solove and Department of Justice Attorney, Alexandra Gelber to 'pick-up' and pursue the case illegally despite not having jurisdiction.

(Compl. p. 11, 12).

As a general rule, prosecutors enjoy immunity from liability with respect to any acts associated with the position of prosecutor so long as such acts are "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). As a policy matter, a prosecutor, in order to perform that job independent of improper considerations, must be free from the threat of suits from those who are accused but not convicted. Otherwise, no limits could be placed on the ability of unhappy participants in the criminal process to harass a prosecutor and, ultimately, to cause the prosecutor to act simply in order to avoid the threat of future litigation, as opposed to vindicating the interests of the state in the independent exercise of prosecutorial judgment.

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would

6

>suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.

Id. at 424-25.

Imbler did not define precisely the contours of prosecutorial immunity.  However, it is clear from Imbler that such immunity extends both to the prosecutor's decision to bring charges and his subsequent conduct of the case.  Further, the immunity extends to the decision to file complaints, obtain an arrest warrant for a defendant, and conduct interrogation relating to the decision to prosecute.  Id. at 556-57.  The immunity also extends to "failing to disclose exculpatory and other information concerning witnesses, procuring false testimony, failing to correct perjured testimony, causing a conflict of interest for defense counsel, not disclosing that conflict,... putting a 'spy' in the defense camp, and 'covering up' those allegedly unconstitutional actions." Jones v. Shankland, 800 F.2d 77, 80 (6th Cir.1986), cert. denied 481 U.S. 1048 (1987).  However, prosecutorial immunity does not extend to acts taken in the prosecutor's administrative or investigative capacities.  See also Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Burns v. Reed, 500 U.S. 478 (1991).

In the instant case, all of the allegations against Ms. Solove, Ms. Sanders and Ms. Gelber, as well as the Delaware County Prosecutor, involve actions taken by those defendants in their capacities as prosecutors.  Mr. Halter's allegations involve evidence that was collected and submitted by the government, as well as the prosecutors' conduct before, during and after his criminal prosecution.  Specifically, the allegations involve the exact actions prosecutorial immunity protects - i.e. allegedly failing to disclose exculpatory and other information concerning witnesses, procuring false testimony, failing to correct perjured testimony, and causing a conflict of interest for defense counsel. Thus, prosecutorial immunity bars Mr. Halter's claims against the

7

Delaware County Prosecutor, Ms. Solove, Ms. Sanders and Ms. Gelber.

### C. <u>Judicial Rulings</u>

The complaint also states (reproduced verbatim):

> Judge Edmund A. Sargus, because of a previous Personal Relationship as well as an on-going Personal Relations with A.U.S.A. Deborah Solve, failed to dispense impartial Justice as well as had an adverser and Personal Conflict of Interest and knew full well same existed yet still 'tried' my case consistantly 'Ruled' in favor of the Government (A.U.S.A. Deborah Solove) to curry favor with her, and further, solely for personal reasons for him and A.U.S.A. Solove, refused to allow me Appellate Bond despite the fact that I was never determined to be neither a 'Flight Risk' nor a 'Threat' to the Community, and also, Judge Sargus did in fact personally know of both The 'Tainted' and Destroyed Evidence, and that same Evidence had in fact been Destroyed by A.U.S.A. Deborah Solove's 'Star' Witness, Steven Starcher, and that he also personally knew of the illegal actions of Lieutenant Dan Mershon and Officer Mark Well and their 'C.S.I.' Investigative Team and conspiracy to conceal Evidence and 'Tamper' with Evidence yet took no actions to address not 'cure' same.
>
> \*\*\*
>
> Judge Sargus has consistently with malice aforethought completely ignored and refused to adjudicate crucial Motions and Pleadings I have submitted to him in pursuance of my Redress despite same being vitally necessary to be expeditiously adjudicated to ensure that Due Process Of The Law is followed.
>
> \*\*\*
>
> Judge Michael C. Hogue, presided over my case despite same be wroght and rife with Procedural, Structural, and Plain Errors as well as knwoing full well of 'Tainted' and Destroyed Evidence

8

(Compl. p. 9, 10).

Judges are entitled to absolute immunity from civil liability regardless of the consequences which follow from their judicial acts. "It is well- established that judges of courts of general jurisdiction are immune from liability for their judicial acts.... Except for acts in the 'clear absence' of jurisdiction, judicial immunity is absolute." Sparks v. Kentucky Character & Fitness Committee, 818 F.2d 541, 542 (6th Cir.1987), vacated, 484 U.S. 1022 (1988), aff'd on reconsideration, 859 F.2d 428 (6th Cir.1988), citing Bradley v. Fisher, 80 U.S. (13 Wall.) 335 (1871); Stump v. Sparkman, 435 U.S. 349 (1978); King v. Love, 766 F.2d 962 (6th Cir.), cert. denied 474 U.S. 971 (1985).

Bradley stands for the proposition that, at common law, a judge enjoys absolute immunity from the consequences of judicial acts, premised upon the concern that if such immunity were not available, judges would constantly be the subject of lawsuits by unsuccessful or dissatisfied litigants, and that the risk of personal liability and the interference with a judicial function posed by the availability of such lawsuits would make it impossible either for judges to carry out their functions or to encourage persons to become judges in the first instance. That common-law principle was extended to liability under 42 U.S.C. § 1983 by Pierson v. Ray, 386 U.S. 547 (1967). As more completely explained in Stump v. Sparkman, supra, the immunity does not disappear even if the judicial act "was in error, was done maliciously, or was in excess of [the judge's] authority"; liability attaches only to acts taken in the "'clear absence of all jurisdiction.'" Id. at 356-57, quoting Bradley v. Fisher, supra.

If a judge acts in some capacity other than a judicial capacity, judicial immunity does not apply. Forrester v. White, 484 U.S. 219 (1988); see Crooks v. Maynard, 913 F.2d 699, 700 (9th Cir.1990)("Absolute judicial immunity only applies to judicial acts

9

and not to administrative, legislative, and executive functions that a judge may perform"). It is not always clear which acts of a judge are "judicial" and which are not. The test is a functional one. The court must consider the nature of the act, not the identity of the actor. "Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one." Morrison v. Lipscomb, 877 F.2d 463, 466 (6th Cir.1989). However, if the act helps to determine the rights and liabilities of parties to a lawsuit, it may be a judicial act even if it does not fall into the traditional category of deciding a case. Once the court determines that an act is of a judicial nature - that is, one ordinarily performed by a judge - and the persons dealing with the judge reasonably understand his actions to have been so performed, unless there is unequivocal proof that the judge acted in the clear absence of all jurisdiction, he or she is absolutely immune from a suit for money damages brought under § 1983.

It is apparent that Mr. Halter is challenging Judges Sargus' and Hogue's judicial decisions. As noted, *supra*, a judge enjoys absolute immunity from the consequences of judicial acts when the judge is acting within his or her jurisdictional capacity. Stump, 435 U.S. at 356-57. Mr. Halter has not alleged that either of the judges he names as defendants were acting outside their jurisdiction. See, Stump, 435 U.S. at 357, fn. 7. This includes Mr. Halter's allegations that Judge Sargus' rulings were based on his relationship with Ms. Solove. Regardless of the veracity of those specific allegations, it is clear based on the complaint that Judge Sargus made these judicial rulings while acting within his jurisdiction to adjudicate criminal proceedings in the Southern District of Ohio. Thus, his actions, as well as the other actions allegedly performed by him and Judge Hogue, regardless if done maliciously, are undeniably judicial in nature. Therefore,

judicial immunity bars Mr. Halter from bringing these claims.

### D. Ineffective Assistance of Counsel

Mr. Halter also asserts claims of ineffective assistance of counsel against his retained trial attorneys.  The complaint states (reproduced verbatim):

> Attorney's Dean Bolan and Christopher Cicero failed to represent me in: 1) Refusing to investigate and present my Witnesses, 2) Were advised of the 'Tampered' and Destroyed Evidence and refused to present same to Court, 3) Never introduced Exculpatory Testimony and Evidence, 4) Never independantly investigated nor impeached Evidence, 5) Failed to and refused to present crucial matters on my Appeal, 6) Improperly prepared my Appeal several times and same because of the flagrant and prejudicial erros had to be rejected by the Appellate Court Clerk
>
> \*\*\*
>
> Attorney's Dean Bolan and Christopher Cicero not only failed to provide any meaningful and competent representation whatsoever which is the proximate cause of both wrongful prosecution as well as illegal conviction and subsequent grossly disproportionate sentence, did knowingly and willingly with malice aforethought, purposely with intent to deprive me of my funds, overcharge me, fail to file critically necessary pleadings, fail to make the necessary Objections, fail to preserve critical matters on Record, failed to present available Evidence, failed to conduct any real Investigation, failed to present readily available Witnesses, failed to obtain necessary Expert Witnesses and Expert Examination of Evidence despite being charging me an outlandish fee for same, Failed to prepare a Legally sufficient and Correct Appeal on my behalf, failed to protect and assert my Sixth Amendment Rights To a Speedy Trial, caused me to suffer under extreme emotional and mental duress for approximately 5 years as my case languished in State Court

11

> while they unbeknownst to me filed Continuance after Continuance while telling me it was the government doing so, failed to provide me with my Case File, Documents, Transcripts, etc., despite my numerous personal pleas and despite numerous letters from me, and utterly ignored and refused to address any of my concerns both during trial and after in my Appellate efforts.

(Compl. pp. 8, 10).

§ 1983 cases can only be brought against defendants acting under color of law. 42 U.S.C. § 1983. Put simply, this means that "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)(citing Shelley v. Kraemer, 334 U.S. 1, 13 (1948)). Here, the Messrs. Boland and Cicero are privately retained attorneys, who by their nature, are not government actors or individuals acting under color of law. Thus, a § 1983 claim cannot be asserted against them.

### E. Prisoner Civil Rights Claims

The complaint further alleges that the FCI Milan Warden and other FCI Milan prison personnel obstructed Mr. Halter's access to courts. In order for this Court to have jurisdiction over Mr. Halter's claims against the FCI Milan Warden and the prison staff, the Court must have both *in personam* and subject-matter jurisdiction. A review of the allegations in the complaint reveals that the Court lacks *in personam* jurisdiction over these defendants. Namely, the Court notes that, according to the complaint, the FCI Milan defendants reside in Michigan and all the events involving the Michigan defendants occurred at FCI Milan, which is also located in Michigan. In this instance, there are no contacts with the forum state to satisfy "general" or "specific" *in personam* jurisdiction requirements. See, e.g., Burger King Corp.

v. Rudzewicz, 471 U.S. 462 (1985)(defining "general" and "specific" jurisdiction).  These claims must be pursued, if at all, in a Michigan court.

III.

Based on the foregoing, the Court RECOMMENDS that the complaint be DISMISSED as frivolous and/or failing to state a claim upon which relief can be granted.  It is further recommended that a copy of the complaint, this report and recommendation, and any dismissal order be mailed to each defendant if the report and recommendation is adopted.

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operate as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 f.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge